**UNITED STATES**

v.

**Staff Sergeant Gordon T. ROBINSON, Jr., FR212–76–2660, United States Air Force.**

**ACM 29600.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 April 1991.

Decided 10 May 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major Alice M. Kottmyer, Major Marilyn A. Gordon, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, Major Paul H. Blackwell, Jr., and Major John H. Kongable.

Before O'HAIR, SNYDER, and GRUNICK, Appellate Military Judges.

### OPINION OF THE COURT

SNYDER, Judge:

Contrary to his pleas, appellant was convicted, by general court-martial, of committing an indecent assault and violating a general regulation, in violation of Articles 134 and 92, UCMJ, 10 U.S.C. §§ 934, 892 (1988). He was sentenced to a bad-conduct discharge and reduction to E–2. He raises three assignments of error, which we resolve adversely to him and affirm.

### I

■ Two of the claimed errors are related and involve Charge III, specification 1, which alleges a violation of Air Force Regulation (AFR) 30–30, *Standards of Conduct*, paragraph 8 (May 1989). Appellant first asserts the specification fails to state an offense. It reads as follows:

> Did ... on divers occasions, ... violate a lawful general regulation ... by influencing a subordinate, Airman [K], through the use of his Air Force rank and position to enter an isolated portion of their duty section to assist and facilitate his making sexual advances toward the said Airman [K].

AFR 30–30, paragraph 8, reads as follows:

> USING OFFICIAL AIR FORCE POSITION. Air Force personnel must not use their Air Force positions to induce, coerce, or influence a person (including subordinates) in any way to provide any personal benefit, financial or otherwise, to themselves or others.

Relying on the same basis as his trial defense counsel, appellant avers that acquiring the opportunity for the "sexual advances" alleged in the specification does not constitute a "personal benefit," and, therefore, no reasonable reading or interpretation of AFR 30–30 reaches the conduct of which he was convicted. As did the trial judge, we disagree with appellant's assertion.

To support his averment, appellant emphasizes the fact that AFR 30–30 defines the term, "gratuity," but does not define "benefit." He argues that this fact reflects the drafters' intent to restrict AFR 30–30 to commercial or financial transactions. This assertion is plainly incorrect. Paragraph 8, by its very terms, clearly addresses benefits other than those of a financial nature. Further, none of our precedents construing AFR 30–30 suggest its reach is confined to financial or commercial situations and transactions. *See United States v. Smith*, 16 M.J. 694 (A.F.C.M.R. 1983) and cases cited therein.

The trial judge was entirely correct in applying the plain meaning of the term, "benefit," which includes "anything that is advantageous or for the good of a person or thing," as well as financial situations. Random House College Dictionary, Rev. Ed. (1980). Consequently, specification 1, Charge III, alleges acts which fall within the terms of the regulation's prohibition and it placed appellant on notice of what he was required to defend against. We find it states an offense under Article 92, UCMJ, 10 U.S.C. § 892 (1988).

### II

A brief recitation of the facts will assist in placing the next assignment of error in perspective. The facts regarding Charge III, specification 1, are not in dispute. Appellant disputed only his intent. Although not the official Noncommissioned Officer In Charge, appellant was a shift supervisor of a software maintenance complex section located at Falcon AFB, Colorado. Airman K was a female airman assigned to appellant's shift. The work area contained tall mainframe computers as well as a room in the rear portion of the work area. The common practice was that a superior conducted counsellings in the rear room, while other corrective action, such as brief oral rebukes or on-the-spot corrections, were provided behind the mainframes. This practice was followed to avoid embarrassment in front of peers.

On three to six occasions during duty hours, appellant appeared in the work area and asked Airman K to step behind the mainframes so he could talk to her. After

they went behind the mainframes, appellant proceeded to hug Airman K. On these occasions, appellant did not speak to Airman K at all (as he did during actual counsellings), but merely smiled and walked away after hugging her. Appellant did not order, or demand, Airman K to step behind the mainframes, but Airman K stated she instinctively assumed appellant was acting in his superior and supervisory capacity when he asked her to step back there, as well as assuming it was for an official work purpose. She never asked the purpose of appellant's requests before responding, nor did she hesitate, for she did not desire to appear insubordinate to a superior. Airman K stated that, on each occasion, she remained rigid with her arms at her side, not responding in any manner, in hopes appellant would realize his actions were unwelcomed.

■ Against this factual background, appellant attacks AFR 30–30, paragraph 8, as unconstitutionally vague, and therefore, void, as applied to him. However, although appellant couches this assignment of error in terms of unconstitutional vagueness, the essence of his brief, and arguments on this issue, is an attack on the punitiveness of AFR 30–30 and the factual sufficiency of the evidence that he violated AFR 30–30, paragraph 8. We disagree with both assertions.

We first address the letter of appellant's assignment of error. AFR 30–30, paragraph 8, is nearly identical to its predecessor AFR 30–30, paragraph 3a(2) (1978), which we held was punitive and constitutional. We hold likewise with regards to paragraph 8. *Smith*, 16 M.J. 694, 701, and cases cited therein.

We now address the substance of appellant's attack on his conviction of violating AFR 30–30, namely, his conduct did not fall within the prohibition of paragraph 8. He argues three bases in support of his assertion: (1) this Court has ruled other provisions of AFR 30–30 insufficiently definite and certain for punitive application, (2) his conduct more properly could have been charged under Article 93, UCMJ, 10 USC § 893 (1988),[1] and (3) his conduct is similar to the factual situation in *Smith*, and the result in *Smith* requires setting aside appellant's conviction. Appellant's first two assertions, plainly, are insufficient reasons to vitiate his conviction. They have no impact on whether his conduct violated paragraph 8. Appellant's third assertion also falls short.

■ The situation addressed in *Smith* involved a lieutenant colonel (Lt Col) who requested subordinates, some of whom were personal friends, to drop by his office at their convenience. When they appeared, he requested a loan of money, sometimes successfully, sometimes not. The loans ranged from the nominal to substantial. *See Smith*, 16 M.J. at 702. During these events, there were times when he was the temporary commander of his unit. The majority's decision devoted significant emphasis, perhaps too much, to whether paragraph 8's predecessor prohibited a superior's borrowing from a subordinate, regardless of circumstances. *Smith*, 16 M.J. at 701–702. After an extensive discussion of the distinction between inducement, influence, and coercion, the majority concluded the Government failed to prove beyond reasonable doubt that Lt Col Smith used his Air Force position to influence his subordinates to loan him money.

Appellant's reliance and asserted application of *Smith* at trial and before us, although not unreasonable, are nevertheless misplaced.

■ First, uncertainty regarding certain legal issues existent when *Smith* was de-

---

1. Cruelty and maltreatment.
   Any person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment, of any person subject to his orders shall be punished as a court-martial may direct.
   The definition applicable to Article 93 includes sexual harassment and other acts quite similar to the prohibitions of AFR 30–30, para. 8. *See* MCM, Part IV, paragraph 17c(2) (1984). Because of this relationship, the trial judge applied the note to MCM, Part IV, paragraphs 16e(1) and (2) (1984), and limited the maximum confinement allowable for appellant's violation of Article 92 to that for a violation of Article 93, which is 1 year.

cided has been clarified. *Compare, e.g., Smith*, 16 M.J. at 703 n. 6, with *United States v. Vidal*, 23 M.J. 319, 324–25 (C.M.A.1987), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). How one uses rank or position to obtain a personal benefit in violation of paragraph 8, *i.e.*, inducement, coercion, influence, or any combination thereof, is irrelevant. When testing for a violation of AFR 30–30, paragraph 8, the focus is on whether one *uses his or her official position* to obtain a personal benefit. The factfinder must apply an objective test in assessing all of the surrounding circumstances to determine if one's office was, in fact, used and, if so, whether it was used to obtain the personal benefit in question.[2]

Second, the result in *Smith* was due to the peculiar posture of the facts developed at trial. It should not be read as defining the absolute, definitive legal parameters for determining when one has wrongfully used his or her office to obtain a personal benefit in violation of paragraph 8.

The instant case is an example of the Government proving the allegations without evidence of a blatant use of rank or position, or by showing stroking or cajolery, etc. However, the evidence clearly shows appellant used his official position to acquire Airman K's presence in a secluded location for unwelcomed hugs. Given the *de facto* supervisory, as well as the superior-subordinate relationship between them, appellant used the force of his position when he indicated his desire to speak with Airman K. Subtly directing her behind the mainframes to effect his desire to hug her out of the view of co-workers provided him a personal benefit in violation of AFR 30–30, paragraph 8.[3]

One other matter merits comment. Department of Defense Directive (DOD Cir.) 5500.7 (May 1987) is the means by which the Secretary of Defense directs the Departments of the Army, Navy, and Air Force, to implement various statutes and executive orders which address personal conduct and ethics. AFR 30–30 implements DOD Dir. 5500.7. As Congress has passed increasingly more legislation in those areas, the implementing regulations unavoidably have grown in length and complexity. Consequently, in view of the fact AFR 30–30 contains advisory and hortatory provisions as well as prohibitions, perhaps the time has arrived for AFR 30–30's drafters to designate a separate section for all its putative punitive prohibitions, or designate a specific paragraph within each section for that purpose.[4] Such a method probably would save considerable appellate resources.

### III

In his final assignment of error, appellant avers the evidence is factually insufficient to support the findings on the indecent assault, Charge I and its specification. Specifically, appellant argues the evidence fails to prove he acted with the intent to gratify his lust or sexual desires. We disagree.

For factual sufficiency we must, while realizing we did not personally observe the witnesses, weigh the evidence and be convinced of appellant's guilt beyond reasonable doubt. *United States v. Turner*, 25 M.J. 324–25 (C.M.A.1987). This offense occurred at the Peterson AFB gymnasium, between 1700 and 1800, in an

---

**2.** In *Smith* the majority cautioned that its opinion should not be applied so as to convert the prohibition into a specific intent crime. *Smith*, 16 M.J. at 709.

**3.** Appellant has no substantive complaint regarding the evidence, for he received a significant windfall at trial. The trial judge treated AFR 30–30, Section D, para. 28 (1989), as a condition precedent, and required the Government to prove appellant was briefed on the provisions of AFR 30–30 in order to prove appellant had a duty to obey it. We are unaware

of any precedent holding AFR 30–30 other than self-executing. We do not view para. 28 as a directive for further implementation, but as seeking the ounce of prevention. *See United States v. Seher*, 39 C.M.R. 975, 978 (A.F.B.R. 1969) ("Wide dissemination is required for compliance, not implementation").

**4.** Currently, the Air Force is in the process of replacing regulations with shorter instructions. This transition would be an ideal time to accomplish this.

office located behind the equipment check-out counter. Airman J was a Morale, Welfare, and Recreation specialist, and was the sole staff member on duty at the time.

Airman J testified that earlier, appellant came to the counter and requested a towel to dry off water jokingly squirted on him by a member of the women's basketball team he coached. A few moments later, Airman J encountered appellant near the water fountain as she exited the women's locker room, and she smiled as she recalled his dousing. Airman J started to perform her clean-up duties, which eventually took her into the offices behind the counter. As she entered the most rearward office, she became aware appellant had followed her behind the counter and into the office. As she asked him what he was doing, he grabbed her forearms from behind. She resisted by trying to pull herself free, but appellant overcame her resistance by pulling her back against him and rubbing his groin area against her buttocks in a grinding motion. Airman J stated she felt something hard, which she concluded was an erection.

Appellant testified they knew each other and it was consensual horseplay. He said as Airman J exited the women's locker room, she poked out her tongue at him and laughed as she headed for the office. He followed and merely stuffed the wet towel down her back because she laughed at him, and then he returned to the basketball court. Appellant denied he had an erection, made any grinding motion, or that he was even gratifying any sexual desires. He stated he was wearing an athletic supporter, and that may have caused Airman J to mistakenly conclude he had an erection. He also testified she simply may have contacted a bony part of his body as she tried to escape his grasp.

Our review of Airman J's testimony convinces us she was able to distinguish between contact which was incidental to her trying to escape his grasp, and appellant actively grinding his groin against her buttocks. We find the evidence is sufficient both legally and factually.

## IV

The Court–Martial Order (CMO) incorrectly reflects the court's sentence. Appellant was reduced to E–2, which is the grade of Airman. The CMO reflects "Airman First Class (E–2)." Airman First Class is pay grade E–3. We direct issuance of a corrected CMO reflecting only E–2. The findings and sentence are correct in law and fact, Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988), and they are hereby,

AFFIRMED.

Senior Judge O'HAIR and Judge GRUNICK concur.